IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USE TECHNO CORPORTATION AND FUTOSHI MATSUYAMA,<br><br>        Plaintiffs,<br><br>   v.<br><br>KENKO USA, INC., et.al.,<br><br>        Defendants.                              / | No. C-06-02754 EDL<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES** |

On April 24, 2006, Plaintiffs Use Techno Corporation and Futoshi Matsuyama (collectively "Plaintiffs") filed this action against Defendants Iovate Health Sciences USA, Inc., Jarrow Formulas, Inc., Jarrow Industries, Inc., Kenko USA, Inc., Soft-Gel Technologies, Inc.,Chemco Industries, Inc., Ronald Udell and Siva Hari (collectively, "Defendants"), alleging that Defendants infringed Plaintiffs' United States Patents Nos. 6,485,760 ("the '760 patent") and 6,716,459 ("the '459 patent"), that Defendants' United States Patent No. 6,784,206 ("the '206 patent") is invalid and that Defendants engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). After other Defendants settled or were dismissed by Plaintiffs or by stipulation, Defendants Kenko USA, Inc., Soft-Gel Technologies and Chemco Industries, Inc. remained.

On July 13, 2007, the Court granted Defendants' Motion for Summary Judgment as to claims of direct infringement of the '760 patent, granted Plaintiffs' Motion to Dismiss as to claims of contributory infringement or inducement of infringement against Defendants with respect to the '760 patent and granted Plaintiffs' Motion to Dismiss as to the declaratory relief claim for the '206 patent. On September 4, 2007, the Court granted Defendants' Motion for Summary Judgment, holding that the '459 patent was invalid for inequitable conduct and lack of enablement. With respect to the false advertising claim, on November 20, 2007, the Court granted Defendants' motion for summary

judgment based on failure to disclose damages and denied as moot Defendants' motion for summary judgment based on unclean hands. The Court entered judgment on January 10, 2008.

On January 24, 2008, the remaining Defendants filed a motion for attorneys' fees, arguing that an award of fees is justified because this case is exceptional under 35 U.S.C. § 285 and seeking $760,115.50 in fees and $271,692.62 in costs. Plaintiffs opposed that motion. The Court held a hearing on March 4, 2008. For the reasons stated at the hearing and in this Order, Defendants' Motion For Attorneys' Fees is granted in part.

Under Section 285, the Court may award attorneys' fees in "exceptional cases." In determining entitlement to fees under this section, a court undertakes a two-step inquiry. See Evident Corp. v. Church & Dwight Co., Inc., 399 F.3d 1310, 1315 (Fed. Cir. 2005). First, the Court must determine that a case is exceptional, which must be shown by clear and convincing evidence. See id. Second, if the case is exceptional, the Court must decide whether to exercise its discretion to award fees to the prevailing party. See id. "The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." Basseler, U.S.A. v. Stryker Sales Corp., 267 F.3d 1370, 1380 (Fed. Cir. 2001) (citing Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed. Cir.2000)); see also Evident Corp., 399 F.3d at 1315 ("First, we have held that 'exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent.'") (quoting Brasseler, 267 F.3d at 180).

**This is an exceptional case under 35 U.S.C. § 285**

The Court's holding on summary judgment that the '459 patent was unenforceable because it was obtained through inequitable conduct is sufficient by itself to render this case exceptional. See Bruno Independent Living Aids v. Acorn Mobility Servs., 394 F.3d 1348, 1355 (Fed. Cir. 2005) ("Because inequitable conduct can be one of several bases sufficient to make a case exceptional for the purpose of awarding attorney fees under § 285, [citation omitted], we do not find reversible error in the determination of an exceptional case."). However, the inequitable conduct finding does not mandate a determination that the case is exceptional. See Gardco Mfg, Inc. v. Herst Lighting Co.,

820 F.2d 1209, 1215 (Fed. Cir. 1987) ("it has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as 'exceptional'").

Here, as explained in more detail in the Court's September 4, 2007 Order, the finding of inequitable conduct was based on the misrepresentation to the Patent and Trademark Office ("PTO") in the '459 patent specification that clinical trials had been conducted, even though the inventor, Mr. Matsuyama, testified that no such trials had taken place. See Declaration of Sri Sankaran in Support of Mot. for Summ. J. (Sankaran Summ. J. Decl.) Ex. C at 18:2-10 ("Q: Did UTC ever commission any clinical tests involving an alcohol extract of banaba leaves? A: By tests, what are you referring to? Q: Clinical studies. A: And are those tests on humans? Q: Correct. A: None took place. Interpreter: Correction. Witness: That was not done."). Moreover, the inventor relied on the lack of any prior clinical trials to distinguish prior art to the PTO. He also testified that the tests were an important part of the patent application. Declaration of Robert Andris in Support of Opp. to Mot. for Summ. J. Ex. A at 105:5-8; see also Sankaran Summ. J. Decl. Ex. I (amendment and reply for '760 patent) ("It is totally improper to conclude that one skilled in the art would learn from Murakami that corosolic acid would be effective in treating blood sugar imbalance in human patients, much less what a suitable dosage should be for this utility."). The Court determined that the misrepresentation to the PTO was highly material, and that "the totality of the circumstances shows that Mr. Matsuyama did not inadvertently err but instead intended to deceive in stating that human tests were conducted using a tablet prepared through an ethanol extraction process." Sept. 4, 2007 Order at 15:6-8. Accordingly, the Court concludes that this case is exceptional for purposes of § 285.

**Defendants are entitled to a limited fee award**

Even if a case is deemed exceptional, an award of fees does not necessarily follow. See Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003) ("In the context of fee awards to prevailing accused infringers, we have observed that § 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice' to the accused infringer. . . .") (internal citation omitted). "The trial judge is in the best position to weigh considerations such as the closeness of the

3

case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986); see also Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1378 (Fed. Cir. 2001) ("The decision to award attorney fees, vel non, is discretionary and permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice.").

An evaluation of the factors weighs against a large fee award to Defendants. Although this was not a close case on the merits, the Court does not find any bad faith conduct in the litigation by counsel for either side, and other factors, specifically those arising from Defendants' business conduct, militate against complete fee-shifting in this case.

The record contains evidence that Defendants apparently engaged in questionable practices during the course of the parties' business relationship. There is evidence that Defendant Chemco Industries deceptively advertised its GlucoTrim product as protected by the '459 and the '760 patents. See Pls.' Mot. for Leave to File Amended Compl. Ex. A at Ex. O at 1. That same advertisement states that Defendant Soft-Gel Technologies holds multiple patents on GlucoTrim, including the '459 and '760 patents. See id. Ex. O at 2. Plainly, the '459 and '760 patents are held by Plaintiffs, not Soft-Gel. In addition, there is evidence that Defendant Soft-Gel sent a cease and desist letter to AIDP, Inc. stating that Soft-Gel was an exclusive licensee of the '459 and '760 patents. See id. Ex. I. The record does not contain evidence to support the contention that Soft-Gel was the exclusive licensee, and Defendants did not deny Plaintiffs' statement in their opposition to the fees motion that the '760 patent was licensed to former Defendant Iovate. See Opp'n at 3. Finally, there is evidence that Satomi Tsuchibe, head of Kenko Corporation, had no intention of honoring the January 26, 2005 Exclusive Sales Agreement between Plaintiff and Defendants. Mr. Tsuchibe testified:

> Q: Okay. So this document [January 2005 agreement] was simply created to mislead the shareholders of UTC.
>
> A: Yes.

4

> Q: And you signed this document.
>
> A: Yes.
>
> Q: Knowing that it was a fraud.
>
> A: Yeah, . . . .
>
> * * *
>
> Q: Okay. But this was - this was a false statement. This agreement was just made to mislead shareholders.
>
> A: Yes. No. This was an explanation that was made to the shareholders. Well, I mean, the upshot of it is that they were doing this in order to mislead their shareholders. Yeah, that's right.
>
> Q: But could they have done it without your signing it?
>
> A: Without signed, I think shareholder or all the people, outside people, don't believe that. So that they need my signature very much.
>
> * * *
>
> Q: Okay. Now the document you sent to Future Ventures, was that a fictitious document also?
>
> A: Yes.

Declaration of Lael Andara in Supp. of Pls.' Mot. to Amend at Ex. C at 294:15-21; 297:5-18; 299:22-24. Considering all of the relevant factors and circumstances, the Court concludes that on balance, shifting the entire fee burden to Plaintiffs is not justified.

Accordingly, a fair allocation of the burdens of the litigation warrants shifting some, but not all, of the fees and costs incurred in the litigation.[1] Therefore, Defendants' motion for attorneys' fees is granted in part. An award of fees is warranted for reasonable time spent by Defendants with respect to the invalidity or unenforceability of the '459 patent. Fees for time spent on issues such as noninfringement or false advertising would not be recoverable.[2]

---

[1] The Court declines Defendants' invitation, without citation to authority, to extend its inequitable conduct finding with respect to the '459 patent to the '760 patent. It did not reach the question whether Plaintiffs' inequitable conduct extended beyond the '459 patent to the '760 patent in the litigation on the merits, and will not do so now to increase the fee award under these circumstances.

[2] Time spent defending against Plaintiffs' false advertising claim is not recoverable. Although recovery of fees under the Lanham Act is appropriate when a case is "groundless, unreasonable, vexatious or pursued in bad faith," the Court did not reach the merits of the false

1 No later than March 31, 2008, Defendants shall provide to Plaintiffs a more detailed summary of the time worked in this case, including a fair allocation of fees that are recoverable from fees that are not under this Order, and a breakdown of time for which fees are sought by task and by attorney. Defendants shall also provide to Plaintiffs the underlying time sheets and expense itemization for all fees still sought, with privileged information redacted. The parties shall meet and confer regarding Defendants' fees in an effort to resolve the amount of the fee award without court intervention. If the parties are still unable to resolve this issue, they shall submit a joint letter to the Court setting forth their positions no later than April 21, 2008. At this time, the Court expects to decide the matter on the papers, but will notify the parties if a hearing is necessary.

**IT IS SO ORDERED.**

Dated: March 11, 2008

            *Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge

---

advertising claim. See Stephen Wilderness Act. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 827 (9th Cir. 1997) (quoting Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996)). Rather, the Court granted summary judgment against this claim on the ground that Plaintiffs failed to disclose any damages information.

6